In May of 2004, Brandon Mayfield, a man who we now know was guilty of no crimes, found himself within the crosshairs of the FBI and the Department of Justice. He was arrested on May 6, 2004, and he was told, Your Honors, that he was a prime suspect of the terrible bombings in Madrid. He was told that he was being investigated for capital offenses. He was told that these offenses were punishable by death. At the same time that he was arrested, his home, his law office, his vehicles, and his safety deposit box were searched pursuant to warrants issued by the District Court of Oregon. Documents and client files were seized from his home and from his law office. Computer hard drives were seized from his home and from his law office. Ms. Russell, before you wander further into the merits, as it were, I have a jurisdiction question. And that is, the district court, as I understand it, did not consider whether its equitable jurisdiction should be exercised in the first instance. Now, I may have missed it in the record because our record was somewhat spotty. I thought about that, Your Honor, when I saw the United States v. CAMA decision, the reason it came down. Yes. Well, but Ramston said exactly the same thing, and it predated CAMA. And as I read it, it is a mandatory decision that the district court must make before it considers the merits of a Rule 41e motion. The reason that I don't think there's a jurisdictional issue here, Your Honor, is that when Mr. Mayfield was released two weeks after his arrest, the court issued an order, and it's part of the record. And that order was an order that all documents and data seized by the government shall be returned and that all copies shall be destroyed. So that was how this whole thing began procedurally. Well, yeah, but I don't understand how that satisfies the CAMA or Ramston four-factor test. And I guess my real question here is why we shouldn't remand to the district court to conduct that threshold inquiry in the first instance first before it or we walks down the merits path, particularly in a case that may or may not raise some first impression issues. Well, I would agree with Your Honor that there is no recitation in the record that the trial judge considered the factors outlined in CAMA. But what is clear to the plaintiffs that what happened here is that the judge issued what I would consider to be the instinctively correct order, which is to say the court is going to undo its own search warrants. It is going to instruct the government to return all documents and destroy all copies. Well, sure, but it couldn't perhaps even have done that. I mean, that's sensible. I'm not quarreling with the notion that it was a sensible thing to do. But one has to have or the district court has got to have jurisdiction first. And we sort of have emphasized the importance of it in a motion such as this so that it isn't too liberally construed, in effect. I'm not sure. And I haven't thought much about these jurisdictional questions until I saw CAMA the other day. Well, neither did I until I did, too. Okay. You may be further along in thinking this through than I am. But Ramsden and CAMA, neither of them were a situation where there was no indictment, there was no intention of indictment. Am I wrong about that factually, Your Honor? Mm-hmm. It's a pre-indictment. Well, Ramsden was a case where the government said, we want there to be, we want to turn this over to Great Britain for further criminal investigation. Nothing like that is going on here. This is a case where the government has said, we are satisfied that we made a mistake, we are satisfied that Mr. Mayfield is no longer a suspect. And it seems to me that going through questions like did the government display a callous disregard for the constitutional rights is not even relevant to a case like this. We're not claiming in this proceeding. Well, it may be relevant on a jurisdiction issue. I would suggest to the court, I would suggest to the court that in a case like this where the government says, we got the wrong man, we have no intention of bothering him anymore, that there is no need at all for the court to exercise equitable jurisdiction but the court to find a constitutional violation. Simply the fact that an innocent man has had his private papers seized and now being retained by the government ought to be sufficient for the court to enter into the fray and decide whether the government should keep the material. Counsel, let me pursue a couple of questions I have with you. As I understand it, it's undisputed for purposes of this appeal that it was a lawful, constitutionally permissible search. Is that right? For the purposes of this appeal, your honor, yes. That's the way I phrased the question. Yes. Now, as far as the privacy concerns go, anyone has a very considerable privacy concern in his papers and what's on his home computer. And his client files, yes, your honor. Once there is a lawful search of his papers and what is on his personal computer, the privacy in those things. What I'm thinking here is, let me lead up to my concern. What I'm thinking is, his privacy was already invaded. His privacy was invaded lawfully. The constitution permitted the search. The private, the heretofore, or theretofore private papers and contents of his computer were already seen and, in large part, probably remembered by government agents. And now, all of the originals have been returned to him. Is that right? Yes, your honor. Now, what is the difference between the government keeping copies and the government agents keeping copies in their heads? There's a certain You and I undoubtedly remember many Supreme Court decisions that we've read, and we can see the footnotes at the bottom of the page in our mind's eye. We probably remember some pages that we read in law school and can still see the footnotes in our mind's eye and remember what some of them said. Speak for yourself, please. Your memory is better than mine. Your honor, privacy is not a momentary, static matter. In this day and age, where a mirror image of a hard drive is the thing itself, where the mirror image of a hard drive is indistinguishable from the hard drive. Not quite. If somebody takes your hard drive and doesn't return it, then when it comes time for you to do your taxes or find the phone number of a friend in Minneapolis when you have a deposition trip to Minneapolis, you can't do it. But if they give you back your hard drive, you can find your friend in Minneapolis and you can do your taxes. So even though they kept a DVD with a copy of everything that was on your hard drive, it isn't the same as if they kept the thing itself. From the point of view of privacy invasion, your honor, I would respectfully disagree. Of course. But they already invaded the privacy lawfully. And my attempt to answer that to you, your honor, would go like this. Persons A and B have seen the material. We can't erase their memories and we're not going to ask the court to do that either. But there are persons C, D, E, F, ad infinitum who have not yet seen the material who will have access to it if it is being retained by the government. Let me ask you about that proposed evil of the government keeping the copies. I gave you the example of the friend in Minneapolis. My guess is Mayfield has friends in I don't know if they're Minneapolis or wherever they might be. The government has at this point a copy of his list of friends. The names, so far as we can tell from this record, don't mean a thing. There's nothing problematic about any of them. Suppose that a year from now one of those friends' names turns up in another investigation and it turns out that one of those friends was involved in some crime. One of the agents says, hey, I remember seeing that name on Mayfield's hard drive. Let's check it. It seems like the question here is whether the agents are going to rely on their memories, which you've suggested might be imperfect because you can't remember all the footnotes from law school, or whether they're going to be able to verify and make sure they don't make another mistake. It would seem to me, Your Honor, that there's always going to be a balancing. Any document in any one of our personal files at home in any one of our computers may be hypothetically at some point in the future useful in some way to the government. But that's an evil in the context of privacy thinking. It is the individual's right. If it was an unlawful search, I'd have no problem with it. Destroy all the copies. If it was an unconstitutional search. My problem with taking your line of argument just now is if it's a lawful search, the question isn't whether the privacy can be invaded. It's just whether you can protect against further errors in the future arising out of the permissible violation of privacy. And I respectfully disagree with Your Honor. And I understand what you're saying, but I respectfully disagree. And I just want a footnote here. Whether or not this search was a constitutional search is being litigated in a separate lawsuit that's pending in the district court. So I mean, I don't want any one... No different deal if it's a bad search. All right. And we're not there yet as to whether or not it's a bad search. But at this point in time, simply on the record, answering your question, the privacy of an American citizen, the right of an American citizen to say to the government, you know, sure, it might be useful to you 20 years from now to know somebody's address that happened to be on my hard drive. But that potential future illusory possible use in a criminal case does not justify the government retaining a record of Internet sites that I visited, a record of my client's secrets that has been seized, my daughter's personal diary, my wife's musings on her computer. Let me tell you, actually I'm thinking of a particular case that I had as a criminal defense lawyer. My client was girlfriend of a hitman. And when the police were investigating the hitman, they seized his truck. After they had his truck for the better part of a year, his girlfriend wanted her truck back. So I did a Rule 41 motion to get the truck back. Part of the argument was, you've had plenty of time to take fingerprints, take all the pictures you want, take it apart, put it back together, look for bloodstains, whatever you want. But the lady needs her truck back. And there, the judge's discretion to allow them to make copies, as it were, was certainly going to maintain the invasion of privacy. I don't think she had anything embarrassing in her truck, but who knows. The invasion of privacy was going to stand and be preserved on film, but at least she could get her truck back. It seems like that was a reasonable exercise of the judge's discretion to order photographing and then order the return of her truck. And I'm thinking in this case, too, had the government urged that it wants to keep the material in order to see if any of the names and connections turn up in future terrorism investigations, but it will give back all the originals so we can work with this hard drive, it might be just like my client's truck. I think there's a significant difference, Your Honor. And again, of course, I can't put myself in the position of your client who's worried about photographs of her truck, but it seems to me that it's a very different thing when we're talking about client files, documents, and personal musings on a computer, websites that have been visited, material, diary-type material that has been maintained. It seems to me, Your Honor, that if your approach to this is correct, and I say this with all due respect and with all respect and humility, I would say to Your Honor that if the government can, quote, make a mistake and then maintain all the fruits of that mistake for use forever in the future, that that would eat up and gobble up the concept of a right of personal privacy. Mr. Urza, I guess I have a very different line of question on it. I'm unclear where you found the privacy interest as an appropriate interest to factor into a Rule 41e motion, which I think the advisory notes indicate is basically a property-based interest. I would have to sit down while Ms. Heller is talking and find. There was a couple of cases where I found that the Court specifically took into account. Well, yes, undercut. I mean, prior to Goodman, our circuit did that, but it was prior to the 1989 amendments to Rule 41e, and it talks in terms of property rights of the property owners to get their property back, and it allows for copies. I mean, under, I'm not saying unconditional, but it allows, it contemplates the retention of copies. So it's unclear to me how you can found a right to return of your property on a privacy interest. It seems to me, Your Honor, that property and privacy are hand-in-glove. They are concepts. The privacy concept comes from the property concept. You have your property back. That's the point. If you need the property for your business, you need it for whatever purpose. You need your glasses back so you can see. I mean, that's the traditional use of 41e. You know, I mean, you took my glasses and I need them back. And if the amendments contemplate the retention of copies, then aren't they simply in return of property land? I don't think so, Your Honor. I think that when the government is seizing things like negatives, that the government is taking a constitutional right away from a person to that privacy, to the government not having that material. And when the government then says, you know, we made a mistake. You really weren't who we thought you were, that the government has seized and continues to retain and continues to give access to this material which the government only collected because of an admitted error. And I think that it's a fundamental type of correlation between property and privacy. I had a lot of things I wanted to say. I'm glad I was able to talk with you. I've got a couple minutes left. I'll reserve it. May it please the court, I'm Kirby Heller and I represent the government. The question before this court is whether the district court's remedy, in which in fact it did balance Mr. Mayfield's concerns against the government needs, was reasonable under the circumstances. The court did a couple of things. First of all, of course, it returned all the original property with the government's consent. As to the copies, it had a very restricted order. They had to be placed in a secure location and that was the government, not just the FBI. So to the extent this information was disseminated and the government in fact stated in some of its, excuse me, in some of its memoranda that they were not disseminated, those all have to be in a secure place. Counsel, I have a couple of questions for you. First of all, your statutory argument. It sounded to me from the logic of your statutory argument that the government is required to keep copies in order to document what it's done, that that would apply to illegal as well as legal searches. At its extreme, it would mean that the government could purposely do an unconstitutional search with its eyes open, taking its chances on the civil lawsuits, and get all the material, make copies, and then give it back after the motion of suppress and the 41G motion were successful, and it would have all of the fruits of the search, even though it was illegal from the get-go. And that leads me to the conclusion that your Your Honor, are you talking about our argument under the Records Act? That's right. Okay. We didn't mean to go that far, certainly. What's the distinction? When I look at the text of the law, I can't see that it would draw the distinction. I think the only point, Your Honor, that we meant to make in that argument is that the government does routinely keep copies of material that it seizes, and that that's consistent with record-keeping obligations. However, if a court ordered us to return these materials, we would not rest on that statutory argument to resist returning it. In this case So you're saying it's just a make-wait, and it really does nothing that 41G doesn't do? It's certainly consistent with 41G. We didn't mean it to go further than that. I would be interested in your response to the jurisdictional question. Your Honor, like Mr. Rosenthal, I haven't given a great deal of thought to that jurisdictional question because our position below, we didn't contest the government's jurisdiction in the first instance. We consented to the return of the original document. So in that case, really, the government, the court exercised its jurisdiction over the return of the original with the government's consent. Well, of course, one can't consent to jurisdiction. That's correct, but I guess we didn't raise it as to the originals below. We did actually raise it to the copies, and the court didn't specifically rule on it, but I'm not sure. I think the question of jurisdiction would have had to come before the return of the originals, and that it wouldn't pertain to the copies by themselves. So because it really wasn't raised below, I have to say I haven't given that any more thought. Okay. What safeguards, if any, are there on the copies of Mayfield's materials being shown to whoever in the federal government wants to look at them, or state governments, I suppose? Well, the court's order is very specific about that. The district court ordered these materials, again, to be in a secure location. Their access to be restricted only to those officials who need them for the enumerated purposes that the court said. That was the government's use in defending against any civil litigation, and for the use in any official investigations. And that's it. The court also restricted the government from disclosing third parties' names and information about them. So the court's remedy was very narrow, taking into account some of the claims that Mr. Mayfield has. There's something that happened in my colloquy with your adversary that I want to ask you about. We were talking about the friend in Minneapolis, do you remember? Yes. And I was struck that the government's brief in this case did not bring up the possibility of some terrorism investigation three years down the road, where what looked like an innocuous name turned out to be an important name. I brought that up, but the government did not. The government relies on the notion that it may need these records to defend itself against Mayfield's civil suit. Have I got that right so far? That is correct, Your Honor. We didn't argue below that we needed it for further investigations, and in fact, as I said, we agreed to this very limited use. Not with the district court's order permitting. That's correct. That's correct. It wouldn't allow the terrorism investigation three years down the road to check the name? Not with these copies. Again, as the discussion went with Mr. Rosenthal, to the extent that information is in people's memories, of course, we can't wipe that out. But as to these copies, their use is very restricted. Now let me ask you about the rationale the government did give, defense against a civil suit. To me, that seems a little slim as compared with the privacy interest that Mayfield has in particularly his computer. Most of us now have our whole lives on our computers. Anything that you're entitled to, to defend yourself in the civil suit, you can get through Rules 26 through 37 of the Federal Rules of Civil Procedure. Your Honor, Rule 41G, of course, is a rule that permits compromise, accommodation, a reasonable balance between what the parties need. It's our position, first of all, that even though the materials potentially could be discovered through civil discovery mechanisms, we're not required to rely on those mechanisms. In addition, the government... We're not required to let you sidestep them by keeping a lot of things, including much that you could not get with those mechanisms. No, and that's why Rule 41G is a flexible rule allowing compromise. The nice thing about Rules 26 through 37 is that they have their own balance of privacy and utility for the lawsuit. The judge can supervise. You can't get somebody's love life out of his computer unless it's a loss of consortium claim. If he drops his loss of consortium claim, you can't get his love life, things like that. But if you've got everything on the computer, all that balancing that's done in 26 through 37 is out the window. Well, again, Your Honor, we believe that in the context of this Rule 41G motion, where the district court did balance it, the government's position was, we need the complete inventory of what was seized in order to defend ourselves in the civil suit. Why are you entitled to more to defend yourself than any other litigant facing a civil suit? Well, Your Honor, I think in other contexts, certainly, where the government has even illegally seized evidence, and of course that's not the case here, it is permitted to keep that material and use it in civil proceedings. We cited a couple of cases in our brief, for example, where the government illegally seized material to defend itself in a 1983 action. It wasn't required to go through civil discovery. We have some dicta from a Supreme Court case where even in the context of grand jury material, the Supreme Court said, just because discovery is available, the attorneys who want to use this material in the context of a civil proceeding aren't required to rely on discovery. Rule 41G says that the court may impose reasonable conditions to protect access to the property and its use in later proceedings. I wonder whether reasonable means that the district court has a fair amount of room to move in one direction or the other, and we have to defer to its judgment about what was reasonable, unless it's an abuse of discretion. That is our position, Your Honor, that the test is reasonableness, and in judging the test, reasonableness would be under an abuse of discretion standard. Why wouldn't it be an abuse of discretion if the government gets to keep, for purposes of defense in a civil suit, much that it would not be permitted to discover for purposes of defense in a civil suit? Well, Your Honor, the fact that the government has this property legally, through a legal search, certainly is one factor that could be weighed in this balancing. In addition, we believe that, under some of this Court's cases, that the sanctions of destroying copies is only imposed in the most extreme circumstances. For example, in the Ramsden case, where there was no question that the search was illegal, and this Court said that there was, in fact, a callous disregard for the defendant's constitutional rights, it nevertheless did permit the government to keep copies, and it framed the test as whether the government's conduct was sufficiently reprehensible. Similarly, and perhaps even more significantly here, in the Grimes case that we also cite in our brief, the government illegally seized materials, and then it used those materials in a civil proceeding against Mr. Grimes for tax violations. And again, the Court said, we will allow the government to retain those copies, and we do so, except in extreme circumstances. None of those circumstances are here in this case, where, of course, the government had probable cause and a facially valid warrant, and the search wasn't illegal, the government acted in good faith. Again, taking into account those circumstances, we don't believe it would be of use of discretion to allow the Court to permit the government to retain those for the limited purposes it did. Okay. Thank you. Ms. Heller? Thank you. Mr. Rosenthal? I have to talk fast here. Your Honor, in Payton v. Laprey, the case that we cited, the Court recognized that the retention in government files of materials can have incredible consequences down the road. They were talking there about the FBI keeping, quote, subversive material. History of a not-too-distant era has demonstrated that future misuse of a file labeled subversive material can prove extremely damaging. Your Honor, Mr. Mayfield did not have an opportunity to do the discovery, which he's entitled to under Rule 41, in order to present to the trial court, and ultimately to you, the amount of dissemination of this material throughout the branches of government. Well, that's what you've got a civil suit pending to accomplish, I would think. We don't want to convert Rule 41 into a sort of a cousin to 1983, do we? No, Your Honor, but when the equitable balancing is to be done, and I was thinking about your question about privacy, when the equitable balancing is to be done under Rule 41, on one side of that balance should be the privacy of a man and his family and his clients. And it would seem to me, in answer to Your Honor's question about the Court's abuse of discretion and exercise of discretion, that that discretion cannot be done in a vacuum where the movement, in this case it was Mr. Mayfield attempting to stop the government from changing, the judge from changing his rule, is trying to show the judge your initial instinctive reaction was correct. Let us present the equities to you. And the judge does not allow it. Okay. Thank you. Thank you, Mr. Rosenthal. Thank you both for your argument in this matter. And the matter just argued will be submitted. What makes your argument in gold?         I don't know. I don't know. I don't know. I don't know. I don't know. I don't know. I don't know. It looks like not as many people are interested in gold. Apparently not. I hope you don't take it personally. People are. Why don't you just wait a second? I'm really sorry. My walkway should be standing back. It's a collective mission. I don't want to take it personally. I don't want to take it personally. Okay.
judges: Rymer, Kleinfeld, Weiner